## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE 1, and JANE DOE 1, in their own capacity and as parent of CHILD DOE 1 JANE DOE 2, in her own capacity and as parent of CHILD DOE 2 and CHILD DOE 3, JANE DOE 3, in her own capacity and as parent of CHILD DOE 4 and on behalf of those similarly situated, | ) ) ) ) ) ) ) | Civil Action No. 2:22-cv-55 |
| Plaintiffs | ) ) | |
| v. | ) ) | |
| NORTH ALLEGHENY SCHOOL DISTRICT, a Pennsylvania governmental entity, RICHARD MCCLURE, ELIZABETH BLACKBURN, MARCIE CROW, LESLIE BRITTON DOZIER, PAIGE HARDY, KEVIN MAHLER, VIDYA SZYMKOWIAK, ELIZABETH WERNER, and SHANNON YEAKEL, all individual elected officials sued in their official capacity as members of the NORTH ALLEGHENY SCHOOL DISTRICT BOARD OF DIRECTORS, a Pennsylvania elected legislative body, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

---

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT

---

Plaintiffs, school-age children attending school in Defendant North Allegheny School District that suffer from disabilities which renders them medically vulnerable to COVID-19, by and through their parents, bring this action for declaratory and injunctive relief on behalf of themselves and a class of similarly situated disabled children who are at severe risk of illness and injury due to their disabilities and allege as follows:

## INTRODUCTION

1.      Despite a clear understanding of the necessity and importance of in-person education and protecting the mental and physical health and lives of children, the School Board of North Allegheny School District, on December 8, 2021, by a 5-4 vote, voted to reverse the Health and Safety Plan of the District requiring universal masking so long as the transmission rate of COVID-19 in Allegheny County was in the "Substantial" or High" categories, and instead, as of January 17, 2022, will arbitrarily permit optional masking in the District regardless of transmission rate of infection.[1]

2.      All authorities, as well as Defendants, agree that in-person instruction is necessary for the mental well-being of all children. See Guidance for COVID-19 Prevention in K-12 Schools, Updated Jan. 6, 2022 ("Students benefit from in-person learning, and safely returning to in-person instruction continues to be a priority.").[2]

3.      Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[3]

---

[1] Defendants McClure, Blackburn, Crow, Szymkowiak, and Yeakel voted in favor of the illegal action alleged herein. Defendants Britton Dozier, Hardy, Mahler, and Warner voted against the measure in a failed attempt to both protect Class Plaintiffs from discrimination and shield the School District from this litigation. The latter Defendants are only included to allow the Court to grant the relief requested herein; no aspersions as to their personal actions as Board Members are intended by this filing.

[2] https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html#:~:text=CDC%20recommends%20universal%20indoor%20masking,layered%20prevention%20strategies%20in%20place.

[3] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

4.      Significantly, asymptomatic carriers of COVID-19 transmit the disease. Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine. However, they are estimated to account for more than 50% of transmissions.[4]

5.      "It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of COVID-19."[5] The CDC explains that a "layered approach" to "reduce the spread of disease" from COVID-19 requires the concurrent use of multiple strategies, of which **"using masks consistently and correctly"** is necessary and has "proven effective."[6]

6.      As recently as January 4, 2022, the CDC reinforced the need for continued application of a "layered approach" to prevention of the spread of COVID-19, requiring universal masking while indoors, stating: "Mask use and layered prevention strategies, such as receiving all recommended vaccination and booster doses, physical distancing, screening testing, and improved ventilation, are key to preventing COVID-19 and decreasing transmission."[7]

7.      In order to keep children in-school, every step necessary to a "layered approach" for preventing the spread of COVID-19, which requires universal masking, should be followed. Id.

8.      The current, most prevalent variant of COVID-19, knows as the Omicron variant, is extremely infectious and is spread much more readily than either the original SARS-CoV-2 strain or the Delta Variant. See CDC Omicron Variant: What You Need to Know, Updated Dec. 20,

---

[4] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html

[5] https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor-spaces

[6]  https://www.cdc.gov/mmwr/volumes/70/wr/mm7030e2 .html (emphasis added).

[7] https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine-isolation-background.html

2021("The Omicron variant likely will spread more easily than the original SARS-CoV-2 virus and how easily Omicron spreads compared to Delta remains unknown. CDC expects that anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms.").[8] Unmasked individuals are both at risk of immediate and irreparable harm from COVID-19, as well as can be the cause of a higher risk of spreading COVID-19 and resultant serious illness and/or death. Id.

9.      Like the rest of Pennsylvania, Allegheny County has suffered from the spread of COVID-19. Beginning in August of 2021, and through the date of this filing, Allegheny County has been continuously in the high infection rate. See Exhibit 1, CDC COVID Data Tracker dated 1/10/2022.

10.     The Board's vote neither accounts for the fact that transmission rate of infection from COVID-19 was still in the "High" category on December 8, 2021 and that it continues to dramatically increase because of Omicron, nor that universal masking is essential to the prevention of the spread of this airborne disease. See Exhibit 1.

11.     According to the Special Education Data Report for 2020-2021 school year, disabled students designated as "Other Health Impairment" comprise 18.3% of the 8,506 students in the District, or 1,557 students. See Exhibit 2.

12.     The Board's vote fails to account for the fact that there are as many as 1,557 children in the school district who are medically fragile disabled students who require the protection afforded by universal masking to reduce the risk of spread of COVID-19 and helps them to have access to the school buildings for in-person instruction.

---

[8] https://www.cdc.gov/ coronavirus/2019-ncov/variants/omicron-variant.html

13.     The Board's vote permitting optional masking forces the parents of medically fragile school children with disabilities to make the shockingly unfair or unjust decision of deciding whether to pull their children out of in-person learning which causes mental harm and havoc on the child and family, or face the quantifiably increased risk of physical harm caused by exposure to severe illness or death as a result of COVID-19.

14.     Since August of 2021 and through the present, due to the high transmission rate of infection from COVID-19 in Allegheny County, the CDC, the Pennsylvania Department of Health, (PADOH), the Allegheny County Department of Health, (ACDOH), all have recommended that school children should universal mask while in school buildings. See Exhibit 1, CDC COVID Data Tracker dated 1/10/2022, p. 2. ("Everyone in Allegheny County should wear a mask in public, indoor settings.")

15.     Further, the American Academy of Pediatrics (AAP) and Children's Hospital of Pittsburgh both recommend universal masking in schools.[9]

16.     The North Allegheny School Board Policy Manual requires that "Board procedures and policies shall be consistent of law, have a rational and substantial relationship to a legitimate purpose of the Board, and be directed toward the maintenance and support of a thorough and efficient system of public education in this District." *See* Board Policy, Section 000, Code 002, Sect. 2.D.i.

17.     The North Allegheny School Board Policy Manual requires the Board to protect the health and safety of the students by minimizing the transmission of communicable diseases. See

---

[9] https://www.chp.edu/our-services/infectious-diseases/covid-19 at COVID-19 and Schools FAQs (PDF) pg 5 ("14. Who should mask at school? Kids? Staff? With rare exception, everyone over the age of two should be wearing a mask to help prevent spread.")

North Allegheny School Board Policy Manual, Section 200 – Pupils, Immunizations and Communicable Diseases, Code 203, Adopted November 18, 2015.

18.     North Allegheny School Board Policy Manual Section 203 - IMMUNIZATIONS AND COMMUNICABLE DISEASES sets forth, in pertinent part:

I. Purpose

**It is the School District's responsibility to safeguard the welfare of all students and staff** and affirms that the classroom/workplace environment should be such that it promotes the physical well-being of students, employees, and the public.

\* \* \* \* \*

IV. Guidelines

B. **Communicable Diseases**

iv. The Superintendent or designee shall direct that **health guidelines and universal precautions designed to minimize the transmission of communicable diseases be implemented** in the North Allegheny School District's programs. [emphasis added]

\* \* \* \* \*

E. Education

i. Instructions regarding communicable and life-threatening diseases shall be provided by the schools in the educational program for all levels.
[Pa. Code] Title 22, Sec. 4.29 [emphasis added]

19.     The School Board's Policy Manual requires the Board to provide school buildings "free from unreasonable risk of disease." Specifically, in Policy Manual Section 800 - Operations, Health and Safety Committee Code 832, Adopted July 19, 2017, 832 - HEALTH AND SAFETY COMMITTEE, sets forth that:

Purpose

It is the goal of the North Allegheny School District **to provide a workplace free from unreasonable risk of injury and disease.**

See https://go.boarddocs.com/pa/nasd/Board.nsf/Public# (emphasis added).

20.     The School Board Policy Manual, states "The Board recognizes its responsibility to safeguard the health and welfare of District students and employees." See id., Section 800 - Operations Emergency Preparedness Adopted August 24, 2016. 805 - EMERGENCY PREPAREDNESS. The Manual requires that "**the Board shall provide the facilities**, **equipment, and training necessary to minimize the effects of** all hazards and emergencies, including but not limited to ... **communicable diseases, and pandemics**. See id. [emphasis added].

21.     Public health concerns are a compelling governmental interest. The Supreme Court has determined that the public health concern of "[s]temming the spread of COVID-19" qualifies as "a compelling interest" of the government. ***See Roman Catholic Diocese of Brooklyn v. Cuomo***, 592 U. S. ___, ___, 141 S. Ct. 63, at 67 (2020) (per curiam) (slip op., at 4) ("[s]temming the spread of COVID-19 is unquestionably a compelling interest."); ***see also American Civil Liberties Union v. Ashcroft***, 322 F.3d 240, 261 (3d Cir.2003) ('ACLU II'). ("Government's compelling interest in protecting minors.").

22.     Prior to the Board vote on December 8, 2021, the Defendant Board recognized the public health significance of COVID-19 and its impact on the District when it approved a Health and Safety Plan designed to help keep the children in school and protect the children's health and well-being while in school during the national pandemic caused by COVID-19. *See* Back to School Plan, Draft Published June 16, 2021 (the "Plan").

23.     In February 2021, the District formed a Back-to-School Planning Committee (the

"Planning Committee") for the 2021-2022 School Year to address the complications of opening school while fighting the spread of COVID-19. *See* Back to School Plan, Draft Published June 16, 2021 (the "Plan").

24.     The Back to School Plan stated that "The District will continue to *follow* local, Commonwealth, and federal guidance, which may require our plans to change." *See* Back to School Plan, Draft Published June 16, 2021 (the "Plan") at p. 2; *see also id.* at p. 12 ("The North Allegheny School District 2021-2022 Health and Safety Plan was developed based on local, Commonwealth, and federal guidance as of June 16, 2021.")

25.     Since stemming the spread of COVID-19 is a compelling governmental interest and the Board recognizes this fact, then the Board should be doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Allegheny County, as the Board is required to do.

26.     According to the Board Policy Manual, "The Board is responsible for acquiring the reliable information from responsible sources which will enable it to make the best possible decisions about the scope and nature of the educational program." *Id.* at Sect. II, D. ii.

27.     Reliable information from responsible sources is readily found from the CDC, PADOH, ACDOH, EPA, American Academy of Pediatrics (AAP), and UPMC Children's Hospital of Pittsburgh, all of which agree that universal masking in schools is essential for preventing the spread of infection to children caused by COVID-19.

28.     Instead of following the reliable information from responsible sources and supporting the compelling governmental interest by doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Allegheny

County, the Board voted on December 8, 2021 to arbitrarily and capriciously remove the protection provided by universal masking from the District as of January 17, 2022 regardless of rate of transmission in Allegheny County.

29.     In doing so, the School Board has put the parents of medically vulnerable students in the position of having to decide whether to keep their children at home where they will likely suffer continued learning loss or risk placing them in an environment that presents a serious risk to their health and safety.

30.     This brutal choice forces children into a situation that violates Section 504 and the ADA.

31.     The ADA and Section 504 prohibit the exclusion of students with disabilities from public educational programs and activities.

32.     Plaintiffs in this matter are students with disabilities within the meaning of the ADA that carry an increased risk of serious complications or death in the event that they contract COVID-19.

33.     Disabling, underlying medical conditions which occur in children have been identified by the Center of Disease Control (CDC) as risk factors for severe COVID-19 infection or death—with or without the vaccination, include a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow

transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; (l) genetic disorders; and/or (m) muscular dystrophy or spinal cord injury. Further, some of the Plaintiffs and the proposed Class are ineligible to receive the vaccine under the Food and Drug Administration regulations.

## JURISDICTION AND VENUE

34.     Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein.

35.     This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §§ 2201–2202.

36.     This Court has subject matter jurisdiction over the ADA Title II and Section 504 of the Rehabilitation Act claims in this case pursuant to 28 U.S.C. § 1331. Plaintiffs' claims arise under the laws of the United States and the relief sought herein is within the power of the Court to grant. See 29 U.S.C. § 701, et seq. and 20 U.S.C. § 1681, et seq.

37.     There exists an actual and justiciable controversy between Plaintiffs and Defendants requiring resolution by this Court.

38.     Plaintiffs have no adequate remedy at law.

39.     Venue is proper before the United States District Court for the Western District of Pennsylvania, Pittsburgh Division, under 28 U.S.C. §1391 because all parties reside or otherwise are found in this District, and all acts and omissions giving rise to Plaintiffs' claims occurred in the Western District of Pennsylvania.

40.     The Court has personal jurisdiction over Defendants because they are: (a) a public

school district head quartered in Allegheny County, Pennsylvania; (b)an elected legislative entity charged with directing the district; and (c) the individuals members of that legislative entity in their official capacity.

## PARTIES

### I.    The Plaintiffs

41.    JOHN DOE 1, and JANE DOE 1, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 1, who is a student in the North Allegheny School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

42.    JANE DOE 2, lives in the School District and bring claims in her own capacity and as parent of CHILD DOE 2 and CHILD DOE 3, who are students in the North Allegheny School District, are medically fragile and considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated

43.    JANE DOE 3, lives in the North Allegheny School District and brings claims in her own capacity and as parent of CHILD DOE 4 who is a student in middle school in the School District, and is considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated.

44.    The putative class of students Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 of the RA and should be shielded from discrimination by their school district.

## II.   The Defendants

45.     Defendant School District is a municipal organization charged with the education of K-12 students in the North Allegheny School District, over eight-thousand, six hundred (8,600) students. Defendant School District is the fifth largest school district in this Commonwealth.

46.     Defendant School Board is made up of nine individual school directors residing and conducting business in Allegheny County, Pennsylvania.

47.     Defendant School Board is an elected school board residing and conducting business in Allegheny County, Pennsylvania.

48.     Upon information and belief, Defendant, Richard McClure, is Board President, an Allegheny County resident and member of the School Board, sued here in his official capacity.

49.     Upon information and belief, Defendant, Elizabeth Blackburn, is Board Vice-President, an Allegheny County resident and member of the School Board, sued here in her official capacity.

50.     Upon information and belief, Defendant, Marcie Crow, is an Allegheny County resident and member of the School Board, sued here in her official capacity.

51.     Upon information and belief, Defendant, Leslie Briton Dozier, is an Allegheny County resident and member of the School Board, sued here in his official capacity.

52.     Upon information and belief, Defendant, Paige Hardy, is an Allegheny County resident and member of the School Board, sued here in his official capacity.

53.     Upon information and belief, Defendant, Kevin Mahler, is an Allegheny County resident and member of the School Board, sued here in his official capacity.

54.     Upon information and belief, Defendant, Vidya Szymkowiak, is an Allegheny County resident and member of the School Board, sued here in her official capacity.

55.     Upon information and belief, Defendant, Elizabeth Warner, is an Allegheny County resident and member of the School Board, sued here in her official capacity.

56.     Defendant School District and School Board are "distinct legal entit[ies] with the capacity to be sued for injuries incurred as a result of the execution of its statutory duties and responsibilities." Thus, they are a "public entity" within the meaning of the Americans with Disabilities Act, 28 C.F.R. §35.104, and receives federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. §794(a).

**FACTS**

**I.     COVID-19 and its Delta Variant Spread Through the Breath of Others**

57.     Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein

58.     COVID-19 is an extremely infectious and deadly disease that is transmitted from person to person.

59.     Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[10]

---

[10] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

60.     Asymptomatic carriers of COVID-19 can also transmit the disease. Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine. However, they are estimated to account for more than 50% of transmissions.[11]

61.     The current COVID-19 variant, known as the Omicron  Variant, is extremely infectious and is spread much more readily than even the Delta Variant and the original SARS-CoV-2 strain.[12]

62.     There is no cure for COVID-19. The vaccine has only recently been approved for children under 12 years old. This means that children under 12 years old are only starting to have the ability or opportunity to become fully vaccinated. The vaccine has been proven less effective for those individuals with weakened or compromised immune systems who are unable to produce a robust immune response to the vaccine.

63.     School-aged children with certain protected disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions. According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[13] And, as with adults who face increased

---

[11] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html

[12] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

[13] Centers for Disease Control, COVID-19: People with Certain Medical Conditions, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[14]

64.     Upon information and belief, the schools located within the North Allegheny School District regularly serve students with these exact disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune systems impact a significant portion of the population.

65.     Defendant School District regularly serves students with these disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune systems impact a significant portion of the population.

**A.     The necessity of masking for safe access to school.**

66.     Prevention of spreading of COVID-19 is done through a layered approach, including wearing face masks, washing hands, cleaning surfaces, social distancing, and introducing new air filters are some examples of modifications that may reduce some risk of COVID-19 transmission.[15]

67.     For school age children who are not yet fully vaccinated or whose disabilities result in a less robust response to the vaccine, the risk of contracting COVID-19 is most successfully mitigated through universal masking and social distancing. The ABC Science Collaborative, led by top physicians on the staff of Duke University, found that masking was effective in preventing

---

[14] Id.

[15] See https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor-spaces ("It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of COVID-19.")

in-school COVID-19 transmission regardless of the physical distance maintained between children as part of social-distancing efforts.[16]

68.     "When teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[17] The cloth layer blocks the droplets from releasing into the environment, along with the microorganisms these particles carry. To be more specific, masks block the large droplets ("20-30 microns and up") as well as finer droplets.[18]

69.     The CDC,[19] the American Academy of Pediatrics,[20] the Pennsylvania Department of Health[21] and Allegheny County Department of Health, all recommend universal masking in schools in an effort to reduce the risk of transmission of COVID-19.

70.     The Pennsylvania Department of Education also supports universal masking to reduce the risk of transmission of COVID-19.[22]

---

[16] https://abcsciencecollaborative.org/wp-content/uploads/2021/06/ABCs-Final-Report-June-2021.06-esig-DB-KZ-6-29-21.pdf?fbclid=IwAR3XDNVh44k8mrrfd2rcJz8rm-zOdtmlouMDkt-Tt3P3zXicWQeeU5E6wA8

[17] Id.

[18] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/maskingscience-sars-cov2.html (last visited Sept. 2, 2021).

[19] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html

[20] https://www.aap.org/en/pages/2019-novel-coronavirus-COVID-19-infections/clinical-guidance/COVID-19-planning-considerations-return-to-in-person-education-in-schools/

[21] See August 31, 2021 PADOH Order.

[22] See September 10, 2021 Directive of the PDE.

71.     Unmasked individuals are at risk of immediate and irreparable harm from COVID-19, as well as at a higher risk of spreading COVID-19, and the consequences of serious illness and/or death.

72.     Accordingly, the entirely reasonable modification being sought in this case is *community masking: protection of selves and others*. Universal masking was successfully implemented in public school districts across Pennsylvania during the 2020 - 2021 school year.

73.     Universal masking was successfully implemented by the North Allegheny School District in the fall of 2021 and no schools were closed due to COVID-19 infection.

74.     Upon information and belief, universal masking was successfully implemented by Defendants during the 2020 - 2021 school year and the fall of 2021.

75.     Upon information and belief, universal masking would not cause any undue hardship on Defendants and would serve both the interests of Plaintiffs and the public in general by greatly decreasing the risk of COVID-19 infection spreading throughout the Defendant School District.

**B.      A Purely Voluntary Opt-out of Masking Pits Children Against Each Other and Creates Serious Risk of Injury and Death.**

76.     As schools reopened in the fall of 2021, COVID-19 infection numbers among school aged children continued to rise.[23]

77.     On August 14, 2021, Allegheny County's COVID-19 community transmission level was moved from substantial to high. At that time, the Center for Disease Control, ("CDC"), the Pennsylvania Department of Health, ("PADOH"), the Allegheny County Health Department, ("ACDOH"), as well as the District Physician ALL recommended that to protect the children and

---

[23] See August 31, 2021 Order of the PADOH.

to limit the spread of COVID-19 within the School District and the community, the School District should immediately implement universal masking.

78.     On August 16, 2021, the School District implemented a District-Wide Policy of universal masking to protect the children and staff in accordance with the School Board's Policy Manual, the District's Health and Safety Plan and recommendations of the CDC, the PADOH, the ACDOH and the District Physician, because COVID-19 transmission rates in Allegheny County had increased from "Moderate" in July to "High" in early August.

79.     On August 18, 2021, without any prior notice to the public at a "Special Meeting/Work Session", the School Board voted by a 6-3 majority to rescind the District-wide universal masking policy in favor of an optional masking policy.

80.     On the evening of Sunday, August 22, 2021, a lawsuit was commenced in federal court to reinstate the status quo of a universal masking policy to protect the children and staff in the District from the spread of infection from COVID-19. *B.P. et al v. North Allegheny School District, et al*, Case No. 2:21-CV-01112-MJH (Pa.W.D.).

81.     On Monday afternoon, August 23, 2021, with all parties represented, the Court heard argument on the Motion and granted a Temporary Restraining Order, which restored the status quo requiring universal masking in the School District. *B.P. et al v. North Allegheny School District, et al*, Case No. 2:21-CV-01112-MJH (Pa.W.D. 8/23/21).

82.     On August 31, 2021, the Acting Secretary of the PADOH entered an Order with an effective date of September 7, 2021, requiring the wearing of face coverings for all K-12 public school districts in the Commonwealth.

83.     On September 22, 2021, the Defendants held a regularly scheduled Combined public board meeting. Following the period of public comment, the Board voted to: (1) to rescind the Board's action of August 18, 2021, which made mask wearing optional. The Vote was 6-3 in favor of rescinding the prior vote. There was a second motion: (2) to adopt a policy to require masks to be worn indoors even after the Department of Health order is lifted for students, staff and visitors while Allegheny County is in substantial or high for community transmission/spread. This motion was approved by a 5-4 majority. Two of the Board Members, who voted in favor of universal masking, did not run for reelection and are not currently serving on Defendant School Board.

84.     On Tuesday, November 2, 2021, the Commonwealth held municipal elections. That election considered the seats of 4 members of Defendant School board.

85.     As a result of the election there is now a 5-4 split on the Board, which represents an improvement guided by the electorate from the previous six members against student safety. However, that improvement did not bring a majority to the side following science and Defendant School Board's prior mandates.

86.     The five Board Members include three who voted against undoing the August 18, 2021 vote, plus two new Members who ran on a political platform that parent's rights come before public health concerns.

87.      The four Board Members in the minority all support applying science and following the recommendations of a layered approach which includes universal masking made by the CDC, the PADOH and the ACDOH, the American Academy of Pediatrics, Children's Hospital of Pittsburgh and the District Physician.

88.     The newly constituted Board notified parents that "Motion 1" for the upcoming December 8, 2021 School Board meeting was to be:

> Motion to revise the North Allegheny School District's Health & Safety Plan to strongly recommend masks indoors effective January 18, 2022, only if the Department of Health order is lifted for students, staff, and visitors or the lifting of the stay entered by the PA Supreme Court on November 30, 2021, in the case of Corman et al. v. Allison Beam, Acting Secretary of Health, which had the effect of maintaining the mask mandate until further order of the court.

89.     At the Board Meeting on December 8, 2021, the Motion passed by a 5-4 margin despite approximately 2/3 of the public comments made at that meeting being in opposition to the motion and considerable statements by medical experts, including the chair of the pediatric unit at UPMC Children's Hospital.

90.     The vote on December 8, 2021, like the August 18, 2021 vote, displayed not only a rejection of legal and medical authority, but a direct disregard for the Board's own policy manual and for the Board's constituency, and creates discrimination under the ADA and RA.

91.     Relevant here, the Board, as shown by its vote, now intends to make masks optional as of January 17, 2022, regardless of local transmission rates of infection from COVID-19 all reliable medical advice, and the discriminatory result under the ADA and RA.

92.     Once again, Defendants attempt to change the status quo and the District-wide policy through one act, in violation of their own procedures, including the requirement that a change in policy be read at a first meeting and voted on at a second meeting after the proposed change is read a second time.

-20-

93.     Prior to the December 8, 2021 vote, each member of the Board was aware and had full and complete knowledge that the COVID-19 virus primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe, which are then inhaled by people nearby.

94.     Prior to the December 8, 2021 vote, each member of the Board was made aware and had full and complete knowledge that COVID-19 was rapidly spreading through Allegheny County and was in the high transmission rate.

95.     Prior to the December 8, 2021 vote, each member of the Board was made aware and had full and complete knowledge that over 50% of COVID-19 transmissions occur from individuals who are pre-symptomatic or asymptomatic.

96.      Prior to the December 8, 2021 vote, each member of the Board was made aware and had full and complete knowledge that a layered approach to preventing the spread of COVID-19 is necessary and to be effective wearing masks is required.

97.      Prior to the December 8, 2021 vote, each member of the Board was made aware and had full and complete knowledge that protecting public health is a compelling governmental interest which is more important than individual parent's legitimate rights to raise their children as they see fit.

98.     Prior to the December 8, 2021 vote, each member of the Board was made aware and had full and complete knowledge individual parent's legitimate rights are limited when confronted by a public health issue.

99.     Defendants decision to institute a health and safety plan which permits optional masking pits child-against-child, endangering the lives of children with disabilities. Parents of school children with disabilities are forced to hope other parents will require masking, and not opt-out. But

when parents permit their children to opt-out of mask wearing, medically fragile children with disabilities and indeed all children are subjected to serious illness or even death as a result of COVID-19 being spread through unmasked breathing, coughing, and sneezing.

100.     In the School District, if optional masking is permitted, the Plaintiffs and those similarly situated will be forced to either attend classes in close proximity to unmasked students, faculty, and staff, or to not attend school in person.

101.     Disabled children being forced to attend school remotely while non-disabled students can attend school in person because the District refuses to make accommodations of universal masking so disabled can attend school in-person is discriminatory in violation of the ADA and RA.

102.     The Plaintiffs and those similarly situated use the same hallways, bathrooms, lunchrooms, and classrooms as their fellow-masked and unmasked classmates.

103.     The Plaintiffs and those similarly situated are entitled to safe, fundamental and non-discriminatory access to their school buildings with universal masking of teachers, custodians, parent volunteers, and students.

104.     The necessity for such masking is greater now than ever. Yet, the policy of the School District to allow optional masking subjects both healthy children as well as children with certain disabilities to serious illness or even death by exercising their fundamental, non-discriminatory right to access their public institutions.

**C.     The School District and the Board of Directors Duties and Responsibilities to Provide a Safe and Healthy Environment for the School Children.**

105.     Defendant School Board is charged by the State with the management and supervision of the public elementary and secondary schools in the District. It derives its authority to govern the

local schools directly from the Constitution of the State of Pennsylvania and the rules and regulations of the Pennsylvania Department of Education. School Board Governance and Operations Legal Status - Board of School Directors, Code 2001, 24 P.S. 301 et seq.

106.    The District is governed by a Board of School Directors consisting of nine (9) directors, each of whom is elected on a regional basis for a term of four years. See Board of School Directors, Code 2001, 24 P.S. 301 et seq.

107.    "A school shall make specific and adequate provision for protecting the health and safety of students and for safeguarding their physical welfare." 22 Pa. Code, § 51.22 General Safety.

108.    A school district is responsible "to comply with the requirements of Section 504 and its implementing regulations at 34 CFR Part 104 (relating to nondiscrimination on the basis of handicap in programs and activities receiving or benefitting from federal financial assistance) and implements the statutory and regulatory requirements of Section 504." 22 Pa. Code, § 15.1 (a) Purpose.

109.    "Section 504 and its accompanying regulations protect otherwise qualified handicapped students who have physical, mental or health impairments from discrimination because of those impairments." 22 Pa. Code, § 15.1 (b) Purpose.

110.    "The law and its regulations require public educational agencies to ensure that these students have equal opportunity to participate in the school program and extracurricular activities to the maximum extent appropriate to the ability of the protected handicapped student in question." 22 Pa. Code, § 15.1 (b) Purpose.

111.    "School districts are required to provide these students with the aids, services and accommodations that are designed to meet the educational needs of protected handicapped students

as adequately as the needs of nonhandicapped students are met. These aids, services and accommodations may include, but are not limited to, special transportation, modified equipment, adjustments in the student's roster or the administration of needed medication. For purposes of the chapter, students protected by Section 504 are defined and identified as protected handicapped students." 22 Pa. Code, § 15.1 (b) Purpose.

112.    "A school district shall provide each protected handicapped student enrolled in the district, without cost to the student or family, those related aids, services or accommodations which are needed to afford the student equal opportunity to participate in and obtain the benefits of the school program and extracurricular activities without discrimination and to the maximum extent appropriate to the student's abilities." 22 Pa. Code, § 15.3. General.

D.    **Defendants' Actions Constitute a Real and Immediate Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act**.

113.    Defendants currently refuse to provide reasonable accommodations to Plintiffs and similarly situated students with disabilities by refusing to implement a Health and Safety Plan designed in accordance with current federal, state, and local guidance.

114.    Defendants' Health and Safety Plan now sets forth that mask wearing will be optional while inside the school building and/or on school grounds.

115.    Defendants' refusal to provide reasonable accommodations in the form of an appropriate health and safety plan puts Plaintiffs, and those similarly situated (namely, children with disabilities) at risk of death and debilitating illness from COVID-19.

116.     Defendants' refusal to provide reasonable accommodations for students with disabilities thereby excludes Plaintiffs from access to school buildings and from their in-person education.

117.     Plaintiffs are students with disabilities, including certain underlying medical conditions, which increase their risk of contracting COVID-19 and/or increase their risk of serious complications or death from a COVID-19 infection.

118.     Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act") provide broad protections for individuals with disabilities.

119.     Both federal disability-rights laws prohibit outright exclusion, denial of equal access, or unnecessary segregation for students with disabilities in public education.

120.     Both laws also prohibit methods of administration that defeat the fundamental goals of public schools, that is, to provide an education.

121.     Finally, both federal disability rights laws impose affirmative obligations on covered entities to proactively provide reasonable modifications or reasonable accommodations to ensure that individuals with disabilities have an equal opportunity to benefit from their public education.

122.     School districts with students who have disabilities, including underlying medical conditions, that make them more likely to contract and/or become severely ill from a COVID-19 infection have a legal obligation to ensure that those children can attend school with the knowledge that the school district has followed recommended protocols to ensure their safety.

123.    Currently, the CDC's guidance, the PADOH's protocol—as well as those recommended by Allegheny County Health Department, the American Academy of Pediatrics and the American Medical Association— all include universal masking.

## CLASS ALLEGATIONS

124.    Plaintiffs bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedures on behalf of themselves and a class of similarly situated individuals consisting of all students with disabilities that make them medically vulnerable to severe infection and/or death from COVID-19 and who attend public school in the North Allegheny School Distritct (the "Class").

125.    The Class is defined as follows: all current and future K-12 students attending or wishing to attend public school in the North Allegheny School District during the coronavirus pandemic who are unable to obtain a vaccine or for whom the vaccine is of limited efficacy due to their compromised or suppressed immune system, as well as all current and future children who attend school in North Allegheny School District who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure  and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological

or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

126.    This action has been brought and may properly be maintained as a class action under federal law. It satisfies the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

127.    Joinder is impracticable because (1) the Class is numerous; (2) the Class includes future members, and (3) the Class members includes many individuals who are incapable due to limited financial means of instituting individual lawsuits.

128.    Numerosity: There are well beyond the necessary number of children in the proposed Class to warrant class certification. Based on publicly available data, 18.3% of the North Allegheny School District student body – nearly 1,600 students – suffer from disabilities protected by the ADA and RA.

129.    Commonality: Common questions of law and fact exist as to all members of the proposed Class, including: (a) whether Defendants' policies and practices discriminate against the members of the Class in violation of the ADA and the Rehabilitation Act; and (b) whether the failure of Defendants to enforce its own order requiring masking in all school located in Defendant School District discriminates against the members of the Class in violation of the ADA and the Rehabilitation Act.

130.    Typicality: The claims of the Named Plaintiffs are typical of those of the Class as a whole, including because (a) each Named Plaintiff is currently attending school at a school within Defendant School District and (b) the Named Plaintiffs' and all of the Class members' claims arise

from the same wrongful acts, omissions, policies, and practices of Defendants, and are based on the same legal theories.

131.    Adequacy: The Named Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. The Named Plaintiffs have no interests adverse to the interests of the proposed Class. The Named Plaintiffs retained counsel with experience and success in the prosecution of civil rights litigation. Counsel for the Named Plaintiffs know of no conflicts among proposed Class members or between counsel and proposed Class members. Plaintiffs' chosen counsel includes:

(a.)    Kenneth R. Behrend, of the Behrend Law Group, LLC. Mr. Behrend is a distinguished member of the Pennsylvania Bar, the Allegheny County Bar, and the Pennsylvania Association for Justice. His practice focuses on consumer protection, and civil rights violations committed by public and private actors specifically including municipal and state governmental entities and includes claims arising under the Civil Rights Act, Americans with Disabilities Act, Section 504 of the Rehabilitation Act. Mr. Behrend served as the law clerk for the class action judge in Allegheny County, the Honorable Silvestri Silvestri, deceased. Mr. Behrend served on the Plaintiffs' Executive Committee as the State Court Plaintiffs' Liaison for the Nationwide Class Action filed against Metropolitan Life Insurance Company as a Multi-District Litigation (MDL) in the Federal District Court in the Western District of Pennsylvania from 1996 until the MDL settled in 2000. *In re: Metropolitan Life Insurance Sales Practices Litigation*, Misc. Docket No. 96-179, MDL 1091 (W.D.Pa. Dec. 28, 1999).  Mr Behrend was also lead counsel on three putative class actions arising out of violations of the Unfair Trade Practices and Consumer Protection Law and has handled multiple collective actions under the UTPCPL and for violations of the Pennsylvania Bad Faith

Statute as lead counsel. Currently he is lead counsel on three other cases with claims arising out of violations of the ADA and Section 504 of the RA filed against school districts in Federal Courts in Pennsylvania.

(b.)    Kevin M. Miller of the Behrend Law Group, LLC. Mr. Miller is a distinguished member of the Pennsylvania Bar, and the Allegheny County Bar Association. His practice focuses on consumer protection, and civil rights violations committed by public and private actors specifically including municipal and state governmental entities and includes claims arising under the Civil Rights Act, Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. Mr. Miller also has experience representing individuals in cases with violations of the Unfair Trade Practices and Consumer Protection Law and the Pennsylvania Bad Faith Statute. Mr. Miller is also counsel in each of the cases alleging violations by School Districts under the ADA and one of the putative class actions identified by Mr. Behrend.

(c.)    Alexander W. Saksen of Goldberg, Kamin & Garvin, LLP. Mr. Saksen is a distinguished member of the Pennsylvania Bar, the Federal Bar, the Maine Bar, and the American Bar Associations. His practice focuses on litigation, employment, civil rights, and labor violations committed by public and private actors specifically including municipal, state, and federal governmental entities and frequently include claims arising under the Civil Rights Act, Americans with Disabilities Act, the Rehabilitation Act. In the past 2 years, Mr. Saksen has appeared as counsel in two putative class actions arising out of medical negligence and discriminatory insurance practices.

132.    Defendants have acted on grounds generally applicable to all proposed Class members.

133.     This action seeks declaratory and injunctive relief. Injunctive or declaratory relief is proper on a class-wide basis, Plaintiffs therefore seek Class certification under Rule 23(b)(2).

134.     In the alternative, the requirements of Rule 23(b)(1) are satisfied because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards for the party opposing the proposed Class.

135.     Common questions of fact or law predominate, and class action is superior device for adjudication Rule 23(b)(3).

## CAUSES OF ACTION

### COUNT I

### DISCRIMINATION ON THE BASIS OF DISABILITY
### IN VIOLATION OF THE ADA

136.     Plaintiffs, on behalf of themselves and those similarly situated, repeat and re-allege each and every allegation above, as if set forth in full herein.

137.     The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1) & (2).

138.     Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

139.    The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

140.    The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

141.    The School District's optional masking policy is denying the District from providing the children of Plaintiffs and those similarly situated with the protections they need to attend school safely. By permitting optional masking, the Board has placed the lives of medically vulnerable children, including Plaintiffs' children, who have disabilities under the ADA in danger. In doing so, Defendants have violated the regulations and provisions of the ADA:

    a.    Defendants are failing to make a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

    b.    Defendants are excluding Plaintiffs from participation in public education in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

    c.    Defendants are failing to make their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

    d.    Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives

of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

142. The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. §§ 35.130 (b)(3)(I) & (iii).

143. Defendants do not have the authority to circumvent the ADA and its protections for students with disabilities through School Board votes on policies.

144. Excluding children from the public school classrooms because of a disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

145. Plaintiffs, in their own capacities and as parents of disabled children, seek to compel Defendants to impose a mandatory mask mandate with limited medical exceptions only where such exceptions are supported by proper medical documentation as this is the only reasonable means to provide the disabled children with "non-discriminatory access to public institutions" under the ADA.

146. Plaintiffs' children are individuals with disabilities recognized under the Americans with Disabilities Act.

147. Plaintiffs' children are otherwise qualified to participate in school.

148. Plaintiffs' children are, as disabled students, will be and have been deprived benefits and services to which all students are entitled, specifically the right to attend and participate in all in-person educational opportunities offered by the school for which they are qualified.

149.    JOHN DOE 1, and JANE DOE 1, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 1, who is a student in the North Allegheny School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

150.    According to the medical team who advises JANE DOE 1, regarding the medical care and treatment of CHILD DOE 1, universal masking is essential for safe schooling for CHILD DOE 1 because of serious health-related issues. CHILD DOE 1, who is twelve years old, is medically vulnerable and requires individualized adult assistance. CHILD DOE 1 is classified as Otherwise Health Impaired, with Medical conditions including supravalvular aortic stenosis (cardiac), renal artery stenosis, hypertension, intellectual disability, ADHD, sensory processing disorder.[24]

151.    After the Board voted on December 8, 2021 to remove universal masking, on or about December 10, 2021, JANE DOE 1, requested the District to make an accommodation to protect her child, CHILD DOE 1 from infection from COVID-19 by having universal masking of all staff and students. JANE DOE 1 reminded the District that CHILD DOE 1's medical team has maintained that universal masking is essential for safe schooling.

152.    CHILD DOE 1's medical team opines that in-person instruction is necessary for CHILD DOE in a Least Restrictive Environment as required by the ADA and Section 504 of the RA.

153.    As of January 10, 2022, the District has yet to respond the JANE DOE 1's request for an accommodation of universal masking around CHILD DOE 1.

---

[24] According to the Special Education Data Report for 2020-2021 school year, disabled students designated as "Other Health Impairment" comprise 18.3% of the 8,506 students in the District, or 1,557 students.

154.     Upon information and belief, the District will deny this request for accommodation as it did with JANE DOE 2.

155.     JANE DOE 2, lives in the School District and bring claims in her own capacity and as parent of CHILD DOE 2 and CHILD DOE 3, who are students in the North Allegheny School District, are medically fragile and considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated

156.     CHILD DOE 2 is 16 years of age and is vaccinated, but not yet eligible to be boosted. Despite being vaccinated, CHILD DOE 2 has contracted an infection from COVID-19. CHILD DOE 2's disability falls under the category of Emotional Disturbance. Some of the current accommodations that CHILD DOE 2 receives include: learning support in an Emotional Support program, school-based therapy and social work services.

157.     CHILD DOE 2 is directly and most prominently negatively affected by virtual learning.  As such, JANE DOE 2, wants, and has a right, to keep CHILD DOE 2 educated via in person learning, which requires a layered approach of protection, including universal masking.

158.     CHILD DOE 3 is 13 years of age and is vaccinated but not yet eligible to be boosted. Despite being vaccinated, CHILD DOE 3 has contracted an infection from COVID-19. CHILD DOE 3 is covered by the ADA under the category of Other Health Impairment. CHILD DOE 3's current accommodations include, but are not limited to, small group testing, daily 1:1 check-ins with a Learning Support teacher, visual aids and/or hard copies of electronic materials, modified testing formats, and teacher prompts and comprehension checks if/when CHILD DOE 3 appears stuck or has difficulty initiating a task.

159.    JANE DOE 2 has legitimate and serious concerns about the District's plan to make masking optional after January 17, 2022. This decision is causing a great deal of stress and anxiety, particularly for CHILD DOE 3, as the decision relates to attending school in-person.

160.    JANE DOE 2 and CHILD DOE 3 are concerned about the impact of optional masking on CHILD DOE 3's health and safety, as well as on family and friends. Even with universal masking and vaccinations, CHILD DOE 3's disabilities make it challenging to catch up after having missed school. Therefore, all preventative measures for a layered approach from the spread of COVID-19, including universal masking are necessary to help keep CHILD DOE 3 in school in order to provide for CHILD DOE 3's education to be delivered in the Least Restrictive Environment (LRE).

161.    JANE DOE 3, lives in the North Allegheny School District and brings claims in her own capacity and as parent of CHILD DOE 4 who is a student in middle school in the School District, and is considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated.

162.    CHILD DOE 4 suffers from significant Attention-Deficit/Hyperactivity Disorder (ADHD) and is medicated.

163.    CHILD DOE 4 goes to the learning support classroom for math as well as any testing. CHILD DOE 4 struggled immeasurably while enrolled in Defendant School District's cyber academy last year, which is reflected in CHILD DOE 4's grades.

164.    Last school year, JANE DOE 3 was the facilitator of cyber learning for CHILD DOE 4. Remote learning caused CHILD DOE 4 so much stress and unrest that it reflected on the entire family. JANE DOE 3's work suffered, her family suffered, and CHILD DOE 4 nearly failed out of fifth grade.

165.    CHILD DOE 4's disabilities make it challenging to catch up after having missed school, therefore all preventative measures for a layered approach from the spread of COVID-19, including universal masking are necessary to help keep CHILD DOE 4 in school in order to provide for CHILD DOE 4's education to be delivered in the Least Restrictive Environment (LRE).

166.    Because of the success CHILD DOE 4 is experiencing by returning to in-person instruction this school year, CHILD DOE 4 is mostly back to a fun-loving happy self.

167.    CHILD DOES 1-4 all suffer from disabilities under the ADA, detailed above, and are thus protected by the ADA and Section 504 from discrimination based on each's disability.

168.    The putative class of students Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 and should be shielded from discrimination by their school district.

169.    Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from the public school classrooms by a failure or refusal to provide a reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

## COUNT II

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

170.    Plaintiffs, on behalf of themselves and those similarly situated, do repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

171.    Plaintiffs and those similarly situated are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

172.    Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the Commonwealth of Pennsylvania.

173.    Defendants, in their official capacities, are the recipients of federal financial assistance.

174.    The Board's December 8, 2021 vote is denying the District the ability to provide the Plaintiffs' children, and others similarly situated with the accommodations they need to attend school safely.

175.    Plaintiffs' children are individuals with a disability recognized under the Section 504 of the Rehabilitation Act.

176.    Plaintiffs' children are otherwise qualified to participate in school.

177.    A public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties, are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

178.    Although a state is not required to maximize the potential of every handicapped child, it must supply an education that provides "significant learning" and "meaningful benefit" to the child.

179.     Section 504 of the Rehabilitation Act provides that: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794 (a).

180.     Defendants have violated the regulations and provisions of Section 504, as follows:

    a.    Defendants are excluding Plaintiffs from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

    b.    Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. §104.4(b)(4);

    c.    Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by school districts, in violation of 34 C.F.R. § 104.4(b)(4).

181.     Defendants do not have the authority to circumvent Section 504 and its protections for students with disabilities through Board votes.

182.     Excluding children from public school classrooms because of a disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

183.     Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from public school classrooms by a failure or refusal to provide a

reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

184.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

185.     Plaintiffs seek a temporary restraining order enjoining the School Board from enforcing the vote of December 8, 2021 permitting optional masking.

186.     Plaintiffs seek a preliminary injunction enjoining the Defendants during the course of this litigation from enforcing the vote of December 8, 2021 permitting optional masking.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and those similarly situated respectfully request that this Court grant the following relief:

A.     Assume jurisdiction of this action;

B.     Certify this Petition as a class action;

C.     Declare that the School Board's vote of December 8, 2021 permitting optional masking violates the rights of Plaintiffs and those similarly situated under the Americans with Disabilities Act and Section 504;

D.   Issue a temporary restraining order enjoining Defendants from violating the Americans with Disabilities Act and Section 504 by permitting optional masking in the School District;

E.   Issue preliminary and permanent injunctive relief enjoining Defendants from violating the Americans with Disabilities Act and Section 504 by permitting parents optional masking;

F.   Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

G.   Grant such other and further relief as may be just, equitable and proper.

Date: January 10, 2022

Respectfully submitted,
Behrend Law Group, LLC

/s/ Kenneth R. Behrend

Alexander W. Sasken
Counsel for Plaintiffs
Pa. I.D. No. 86049
GOLDBERG, KAMIN, GARVIN, LLP
1806 Frick Building
437 Grant Street, 18th Floor
Pittsburgh, PA 15237
(412) 281-1119
alexanders@gkattorneys.com
Counsel for Plaintiffs

Kenneth R. Behrend
Counsel for Plaintiffs
Pa. I.D. No. 37961
BEHREND LAW GROUP LLC
The Pittsburgher, Suite 1700
428 Forbes Avenue
Pittsburgh, PA 15219
(412) 391-4460
krbehrend@behrendlawgroup.com
Counsel for Plaintiffs

-40-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was served by e-mail on this 10th  day of January 2022, addressed to the below parties and counsel:

NASD SOLICITOR
Alfred Maiello, Esquire
Maiello, Brungo & Maiello
7500 Brooktree Ct.
Wexford, PA 15090
acm@mbm-law.net

MEMBER BLACKBURN
lblackburn@northallegheny.org

MEMBER BRITTON-DOZIER
lbrittondozier@northallegheny.org

MEMBER CROW
mcrow@northallegheny.org

MEMBER HARDY
phardy@northallegheny.org

MEMBER MAHLER
kmahler@northallegheny.org

MEMBER MINTON
aminton@northallegheny.org

MEMBER SZYMKOWIAK
vszymkowiak@northallegheny.org

MEMBER WARNER
ewarner1@northallegheny.org

MEMBER YEAKEL
syeakel@northallegheny.org

BOARD SECRETARY
kcaldwell@northallegheny.org

NASD SUPERINTENDENT
mfriez@northallegheny.org

Respectfully submitted,

By: /s/Kenneth R. Behrend
Kenneth R. Behrend
Counsel for Plaintiffs
Pa. I.D. No. 37961
BEHREND LAW GROUP LLC
The Pittsburgher, Suite 1700
428 Forbes Avenue
Pittsburgh, PA 15219
(412) 391-4460 (Telephone)
(412) 391-5073 (Facsimile)
krbehrend@behrendlawgroup.com