IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE 1, JANE DOE 1, *in their own capacity and as parent of CHILD DOE 1*, JANE DOE 2, *in her own capacity and as parent of CHILD DOE 2 and CHILD DOE 3*, and JANE DOE 3, *in her own capacity and as parent of CHILD DOE 4 and on behalf of those similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> NORTH ALLEGHENY SCHOOL DISTRICT, *a Pennsylvania governmental entity*, RICHARD MCCLURE, ELIZABETH BLACKBURN, MARCIE CROW, LESLIE BRITTON DOZIER, PAIGE HARDY, KEVIN MAHLER, VIDYA SZYMKOWIAK, ELIZABETH WERNER, SHANNON YEAKEL, *all individual elected officials sued in their individual capacity and in their capacity as members of the* NORTH ALLEGHENY SCHOOL DISTRICT BOARD OF DIRECTORS, *a Pennsylvania elected legislative body*, and NORTH ALLEGHENY SCHOOL DISTRICT BOARD OF DIRECTORS, *a Pennsylvania elected legislative body*, <br><br> Defendants. | 2:22-cv-55 <br><br> Judge Marilyn J. Horan |

**TEMPORARY RESTRAINING ORDER**

This Court is tasked with marshalling the law under statues and well-reasoned case law. Just as these are unprecedented times, this Court has little, if any, precedent to guide its decision in this case. Equally unprecedented is the societal reaction to the pandemic thereby pitting community members against each other. The Court comments on this backdrop as an observation of a troubling trend and to provide some semblance of an objective perspective.

1

Ultimately, the Court's ruling today must be based solely on whether the School District, under its own standards and the law under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973, has reasonably accommodated immunocompromised students, by purporting to offer a cyber school option to those students. Political rhetoric aside, the Court must evaluate whether the School Districts has complied with federal law. In recognizing the altruism of protecting the most vulnerable of our society, when Congress passed the ADA in 1990, it stated in its findings that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C.A. § 12101(a)(2).

The timing of this TRO motion has left this Court with limited options. School was set to resume tomorrow with a masking optional policy. The Court's ability to conduct a full TRO analysis has been limited to the briefing and argument of the parties. This case and claims are better addressed following a period where the parties have conducted discovery and/or potentially undertaken the proper administrative routes. The prudent and practical approach, given the potential negative impacts on the putative Plaintiffs' health and education, is that a reasonable period of maintaining the status quo is necessary. At this stage, the School District has offered the accommodation of cyber school to students who are immunocompromised. The School Board's proffer of the cyber school accommodation fails to account for the impact to the immunocompromised students' educational needs and potential family needs to assist their homebound children. In addition to providing mask guidance and information on community spread, the CDC has also advised that "[s]tudents benefit from in-person learning, and safely returning to in-person instruction continues to be a priority." *Guidance for COVID-19*

*Prevention in K-12 Schools*, Ctr. Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last updated Jan. 13, 2022).  In weighing this accommodation, the Court finds, for purposes of this TRO only, that effecting a cyber school only option upon immunocompromised students when faced with optional masks versus burdening the District with students conducting universal masking is not a reasonable accommodation and such violates the spirit of the ADA as enacted by Congress.  The School Board's proffer of the cyber school accommodation fails to account for the impact to the immunocompromised students' educational needs and potential family needs to assist their homebound children.  The Court cannot say, at this stage, that such accommodation meets the protections provided for under the ADA and Section 504.

On January 17, 2022, the Court heard arguments on Plaintiffs' Motion for a Temporary Restraining Order.  Plaintiffs seek limited relief, requesting that this Court restore the status quo that existed prior to the School Board's December 8, 2021 vote, by requiring the District to reinstate their mandate for universal masking so long as the transmission rate of infection from COVID-19 for Allegheny County was in the "substantial" or "high" categories.  Following review of Plaintiffs' Complaint, Motion for Temporary Restraining Order and Brief, Defendants' Brief in Response, arguments of counsel, and for the reasons stated on the record in open Court, the Court finds that good cause exists for the issuance of a Temporary Restraining Order.  At this early stage of the proceedings and based upon the standard to be applied for issuance of a Temporary Restraining Order, this court concludes that Plaintiffs are likely to prevail on the merits of their claims for disability discrimination based upon the ADA and Section 504 of the Rehabilitation Act, and that the facts demonstrate Plaintiffs will suffer immediate and irreparable injury if a temporary restraining order is not granted, and that issuance of the

Temporary Restraining Order will not impose undue burden on the Defendants, and that the public interest weighs in favor of granting the relief. As such, Plaintiffs' Motion will be granted.

**I.      Statement of the Facts**

On August 16, 2021, the School District implemented a District-Wide Policy of universal masking. *Id*. at ¶ 78. On August 18, 2021, the School Board voted by a 6-3 majority to rescind the District-wide universal masking policy in favor of an optional masking policy. *Id*. at ¶ 79. On the evening of Sunday, August 22, 2021, a lawsuit was commenced in federal court to reinstate the status quo of a universal masking policy. *B.P. et al v. North Allegheny School District, et al*, Case No. 2:21-CV-01112-MJH. *Id*. at ¶ 80. On August 23, 2021, with all parties represented, the Court heard oral argument and granted a Temporary Restraining Order, which restored the masking policy as adopted on August 16, 2021. *Id*. at ¶ 81.

Subsequently, on August 31, 2021, the Acting Secretary of the Pennsylvania Department of Health entered an Order with an effective date of September 7, 2021, requiring the wearing of face coverings for all K-12 public school districts in the Commonwealth. *Id.* at ¶ 82. On September 22, 2021, the Defendants held a regularly scheduled combined public board meeting. *Id*. at ¶ 83. Following the period of public comment, the Board voted to: (1) rescind the Board's action of August 18, 2021, which made mask wearing optional; and (2) adopt a policy to require masks to be worn indoors even after the Department of Health order is lifted for students, staff, and visitors while Allegheny County is in substantial or high for community transmission/spread. *Id*. ¶ 83. On December 8, 2021, the North Allegheny School District School Board voted to reverse the District's Health and Safety Plan, which required universal masking when the transmission rate of COVID-19 in Allegheny County was in the "substantial" or "high"

categories.  (ECF No. 1, at ¶ 1).  As a result of this reversal, masking was set to become optional on January 18, 2022.  *Id*.

Since August 2021 through the present, Plaintiffs allege that, under CDC guidelines, Allegheny County remains at a high level of transmission rate of infection from COVID-19.  *Id*. at ¶ 14.  Plaintiffs further aver that the District has as many as 1,557 children in the District who are medically fragile disabled students who require the protection afforded by universal masking to reduce the risk of spread of COVID-19 and to afford them access to the school buildings for in-person instruction.  *Id*. at ¶ 12.  Plaintiffs allege that the District's December 8, 2021 decision places the parents of medically vulnerable students in the position of having to decide whether to keep their children at home, where they will likely suffer continued learning loss, or risk placing them in an environment that presents a serious risk to their health and safety.

**II.    Standard of Review**

Four factors govern a district court's decision whether to issue a temporary restraining order or preliminary injunction: "(1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest."  *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 302 (3d Cir. 2013) (internal quotations omitted).  The Court must determine "in its sound discretion if all four factors, taken together, balance in favor of granting the preliminary relief."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  To show a likelihood of success on the merits, "the movant need only prove a prima facie case, not a certainty she'll win."  *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (internal quotations omitted).  Similarly, the Third Circuit Court has explained that the "movant need only

show a reasonable probability of success." *Id.* (internal quotations omitted). "A plaintiff seeking a preliminary injunction must prove irreparable harm is likely in the absence of relief." *Id.* at 142 (internal quotations omitted).

### III. Discussion

#### 1. Likelihood of Success on the Merits

Before turning to the merits of Plaintiffs' ADA and Section 504 claims, the Court will first address Defendants' arguments regarding standing and administrative exhaustion. Defendants argue that Plaintiffs lack standing to bring the present action. (ECF No. 15, at 7). Defendants likewise argue that Plaintiffs have not properly exhausted administrative remedies. (ECF No. 15, at 12). The Court will first consider Defendants' standing argument and will then address Defendants' exhaustion of administrative remedies argument.

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The existence of a case or controversy is "a prerequisite to all federal actions, including those for declaratory or injunctive relief." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003). The case or controversy requirement mandates that: (1) the plaintiff has standing to bring the action; (2) the plaintiff's claim is ripe for adjudication; and (3) the claim does not suffer from mootness. *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 789 (M.D. Pa. 2009).

For an injury to be cognizable, it cannot be "too speculative" and it must be "certainly impending." *Clapper*, 568 U.S. at 409. Allegations of possible future injuries are insufficient to confer standing upon a plaintiff. *Id.* In the context of claims for injunctive relief, standing has been interpreted to mean that "a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or

hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotations omitted).  For the purposes of establishing an injury for Article III standing, a breach of a statute is sufficient to cause a cognizable injury, and thus to permit individuals "to sue to remedy violations of their statutory rights, even without additional injury." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 635-41 (3d Cir. 2017).

In this case, Plaintiffs' claims are premised on federal legislation with the purpose of affording access to service under the ADA and Section 504 for disabled persons.  As a breach of a statute is sufficient to meet the cognizable injury standard, Defendants' assertions that none of the Plaintiffs have yet contracted COVID-19 and thus lack standing, is not the correct lens through which to examine the issue.  Instead, the focus of the Court's analysis rests upon whether a statutory right of the Plaintiffs have been violated under the ADA or Section 504 of the Rehabilitation Act.  As the Middle District of Pennsylvania found in the case of *Doe #1 v. Del. Valley Sch. Dist.*, 2021 WL 5239734, at *15 (M.D. Pa. Nov. 11, 2021), "it is beyond dispute that any disabled Plaintiff has standing to sue pursuant to the ADA and Rehabilitation Act."  As such, the Complaint adequately alleges that Plaintiffs are disabled individuals with the ability to seek legal recourse under the ADA and Section 504 of the Rehabilitation Act.  Thus, Plaintiffs have standing in the present action regardless of whether any of the Plaintiffs have suffered a concrete or particularized injury due to COVID-19.

Next, Defendants argue that Plaintiffs' Motion for a Temporary Restraining Order should be denied because Plaintiffs have not exhausted administrative remedies for seeking accommodations for their disabilities in the District.  Plaintiffs who seek remedies under the

ADA or Section 504 of the Rehabilitation Act are required to first exhaust administrative remedies prior to filing a Complaint in District Court if the matter is one that involves claims related to education provided to students under the Individuals with Disabilities Education Act (IDEA).  20 U.S.C. § 1400 *et. seq*.  The core guarantee of the IDEA is a "free appropriate public education," or FAPE.  20 U.S.C. § 1412(a)(1)(A).  "FAPE comprises special education and related services—both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction."  *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748-49 (2017) (internal quotations omitted).

"Under the IDEA, an individual education program, called an IEP for short, serves as the primary vehicle for providing each child with the promised FAPE."  *Id.* at 749 (internal quotations omitted).  "Crafted by a child's IEP Team—a group of school officials, teachers, and parents—the IEP spells out a personalized plan to meet all of the child's educational needs."  *Id.* (internal quotations omitted).  "Because parents and school representatives sometimes cannot agree on such issues, the IDEA establishes formal procedures for resolving disputes."  *Id.*  The IDEA provides parents who wish to make a complaint under the act with an avenue to file that complaint and participate in an impartial due process hearing which is conducted in compliance with state proscribed procedures.  20 U.S.C. § 1415(f)(1)(A).

The Supreme Court has articulated a test in *Fry v. Napoleon Community School* for determining whether a claim brought under the IDEA, ADA, Rehabilitation Act, or related statutes is a FAPE or non-FAPE based claim.  137 S. Ct. at 755.

> The statutory language asks whether a lawsuit in fact "seeks" relief available under the IDEA—not, as a stricter exhaustion statute might, whether the suit "could have sought" relief available under the IDEA (or, what is much the same, whether any remedies "are" available under that law).  In effect, § 1415(l) treats the plaintiff as "the master of the claim": She identifies its remedial basis—and is subject to exhaustion or not based on that choice.  A court deciding whether §

> 1415(l) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education.
>
> But that examination should consider substance, not surface. The use (or non-use of particular labels and terms is not what matters. The inquiry, for example, does not ride on whether a complaint includes (or, alternatively, omits) the precise words[] "FAPE" or "IEP." After all, § 1415(l)'s premise is that the plaintiff is suing under a statute other than the IDEA, like the Rehabilitation Act; in such a suit, the plaintiff might see no need to use the IDEA's distinctive language—even if she is in essence contesting the adequacy of a special education program. And still more critically, a "magic words" approach would make § 1415(l)'s exhaustion rule too easy to bypass. . . . Section 1415(l) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way.

*Id.*

This case involves disabled Plaintiffs that cannot access facilities in the District. The medical information regarding Child Doe 1 concerns a medical preclusion from participation within a building in the District where there is no masking. Given the disability of that immunocompromised student, attending a school where there is no universal masking requirement places that student in the position of having no access to the building. These circumstances are considered to be a non-FAPE based claim under the ADA because it involves problems with accessing the facility rather than problems with accessing the public school curriculum provided by the District. Thus, under the *Fry* test, the immunocompromised Plaintiff would not need to show an exhaustion of administrative remedies because the circumstances of the Plaintiff's claim would be the same regardless of whether or not the facility was a public school.[1] As such, as this is not a FAPE-based claim, the immunocompromised Plaintiffs are not required under the IDEA to exhaust administrative remedies prior to filing suit in this Court.

---

[1] A similarly immunocompromised staff member, parent, or teacher would likewise be unable to access the facility and would likewise have similar ADA and Section 504 claims.

Having resolved the Defendants' arguments regarding standing and exhaustion of administrative remedies, the Court now turns to the merits of Plaintiffs' ADA and Section 504 claims.  Plaintiffs assert their claim for relief, alleging that the Defendants have failed to properly comply with Section 504 of the Rehabilitation Act, an antidiscrimination statute that provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program receiving Federal financial assistance."  29 U.S.C. § 794(a).  Title II of the Americans with Disabilities Act is also an antidiscrimination statute and provides that "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Both the ADA and Section 504 of the Rehabilitation Act require Plaintiffs to establish that: (1) they are qualified individuals with a disability within the meaning of Section 504 of the Rehabilitation Act or ADA; (2) they will be excluded from participation in or denied benefits of such services, programs, or activities of the public entity; and (3) their exclusion, denial of benefits, or discrimination occurred by reason of their disability." *Furgess v. Pa. Dept. of Corrections*, 933 F.3d 285, 288-89 (3d Cir. 2019).  The ADA prohibits discrimination that includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).  When a state entity, like a school board, fails to make reasonable modifications to its facilities and practices, a party may sue the school board by bringing a claim known as a failure to

accommodate claim. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). A failure-to-accommodate claim differs from other ADA claims in that the plaintiff is not required to show that his injury was the result of purposeful discrimination. *See Muhammad v. Court of Common Pleas of Allegheny Cty.*, 483 F. App'x 759, 764 (3d Cir. 2012) (citing *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561-62 (7th Cir. 2003)). Instead, the ADA's "by reason of" language requires a showing of causation: the plaintiff must demonstrate that, but for the failure to accommodate, he would not be deprived of the benefit which he or she is entitled. *See id.*; *see also CG v. Pa. Dept. of Educ.*, 734 F.3d 229, 237 (3d Cir. 2013).

For the purposes of their ADA and Section 504 claims, Plaintiffs and Defendants both agree that Plaintiffs are qualified individuals with disabilities. At the September 22, 2021 Board meeting, the Board reimplemented a mask mandate, based upon express criteria, one of which was a benchmark provision for universal masking based upon when the community transmission rate was at a rate of "substantial" or "high." As of September 22, 2021, the Delta variant was circulating amongst the community with a community transmission rate of 513 cases per day and a 6.0% positivity rate.[2] As a consequence, for the majority of the 2020-2021 and 2021-2022

---

[2] The Court take judicial notice of the rates of community spread from the Allegheny County Health Department, the Pennsylvania Department of Health, and the Center for Disease Control websites. See *COVID-19 in Allegheny County*, Allegheny Cty. Health Dep't., https://tableau.alleghenycounty.us/t/PublicSite/views/COVID-19Summary_16222279737570/COVID-19Summary?:showAppBanner=false&:display_count=n&:showVizHome=n&:origin=viz_share_link&:isGuestRedirectFromVizportal=y&:embed=y (last updated Jan. 14, 2022, 3:40:03 PM); *COVID-19 Data for Pennsylvania*, Pa. Dep't Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last visited Jan. 17, 2022); and *COVID Data Tracker*, Ctr. Disease Control & Prevention, https://covid.cdc.gov/covid-data-tracker/#county-view?list_select_state=Pennsylvania&data-type=Risk&list_select_county=42003 (last updated Jan. 15, 2022, 8:00 PM).

school years to date, masks have been mandated within the District. Although wearing masks in the District has been inconvenient and controversial, this mask mandate status has been attained and maintained within the District without unreasonable expenditure or difficulty.

On December 8, 2021, despite the fact that the community transmission rate was measured at a positivity rate of 10.2% of a total of 3,277 infections for the week beginning December 5, 2021 and still within the "high" category, the Board voted to make masks optional within the District beginning January 18, 2022, conditioned upon whether the Pennsylvania Department of Health's mask mandate was lifted and the Pennsylvania Supreme Court's stay order was no longer in effect. As of December 10, 2021, the Pennsylvania Supreme Court vacated the Department of Health's mask mandate. *Corman v. Acting Secretary of the Pa. Dept. of Health*, 2021 WL 6071796, at *1 (Pa. December 10, 2021). Thus, the mask optional policy would become effective in the District on January 18, 2022. The December 8, 2021 Board action also removed the provision that masks were to be required to be worn within the District whenever the community transmission rate was within the "substantial" or "high" categories. The Board provided no explanation for why it decided to lift the mask mandate when the transmission rate was in a category of "high" or for why it removed the community transmission rate categories of "substantial" and "high" as benchmarks for when to require masking within the District.

Presently, since September 22, 2021, the Omicron variant has emerged. The Omicron variant is even more highly transmissible than the Delta variant. As such, the community transmission rate is currently at 3,500 infections per day and a 37.1% positive rate, which is six times higher than the positivity rate on September 22, 2021, when the Board reinstated the mask mandate and established criteria for when masks should be worn in the District based upon rates

of community spread.  The transmission classification remains at its highest category of "high."  At this early stage in the litigation and with the little record yet developed, it is curious that, while the Board determined in September 2021 that mandating masks, based upon the transmission rate categories of "substantial" and "high," was manageable, appropriate, and reasonable, but that in December 2021, when the transmission rates were increased and the category was still at a status of "high," that the Board voted to eliminate the benchmark and make masks optional.  Beyond December and in light of the proliferation of the Omicron variant, which has resulted in significantly increased numbers of infections within the population, with particular increases in infection rates for children, it is concerning that the District has not acted to reinstate the masking mandate and transmission rate categories to avoid the optional masking policy's January 18, 2022 effective date.

Turning to the Plaintiffs in this case, Child Doe 1 is alleged to have medical conditions that can be classified as immunocompromised, which presents legitimate concerns and risks to health and life from COVID-19 exposure and infection.  (ECF No. 1, at ¶ 41).  The Plaintiff has alleged that significant expert opinions exist within the medical and infectious disease fields to support that a layered approach, which includes vaccination, masking, quarantining, contract tracing, social distancing, and increased building ventilation are all required to effectively reduce the spread of COVID-19.  It is the combination of these measures that make them effective and, without any one of them, individuals with disabilities, like Plaintiffs and those similarly situated, are at increased risk of contracting the virus and severe illness or death.  (ECF No. 4, at 8). Plaintiffs allege that the increased risk of infection due to optional masking within the District creates a barrier to attending in-person classes with their non-immunocompromised peers.  The Plaintiffs also allege that the District has failed to make reasonable accommodations for them to

13

access educational services and has placed them at increased risk of physical harm. The Board has provided no explanation for whether it took into consideration any needed accommodations for disabled students in the District when it made the decision to lift the school mask mandate.

Plaintiffs, John and Jane Doe 1, make claims on behalf of Child Doe 1, as an immunocompromised student, plus claims for a class of similarly situated students. The record has not yet been developed to ascertain whether the asserted class will be qualified or have standing. However, at this stage the court will consider that Child Doe 1 is immunocompromised and that John and Jane Doe 1 on behalf of Child Doe 1 have sufficiently established a likelihood of success on their claim that the District's optional masking policy has the effect of excluding Child Doe 1 from in-person attendance at public school or has otherwise denied Child Doe 1 the opportunity to participate in the in-person services of the District and that any such exclusion is based upon Child Doe 1's disabilities.

In December, the District removed the benchmark that it had established and implemented for mask mandates when the community transmission category was "substantial" or "high." Said benchmark and its implementation provided an effective and manageable accommodation to enable immunocompromised students to attend in-person classes with their non-disabled peers. In such circumstance, Plaintiffs have demonstrated a likelihood of success on the merits of their ADA and Section 504 claims based upon the failure of the District to provide a reasonable accommodation for immunocompromised students within the District.

2. **Likelihood of Plaintiffs to Suffer Irreparable Harm**

The Court finds that Child Doe 1 is likely to suffer irreparable harm if such access to the District is denied on account of the District's optional mask policy. The ADA and Section 504 of the Rehabilitation Act mandate that disabled plaintiffs must have equal access to opportunities

using the least restrictive means possible.  Denying immunocompromised Plaintiffs the opportunity to access educational opportunities in the District will cause the immunocompromised Plaintiffs to suffer irreparable harm.

Additionally, Plaintiffs' Complaint and Brief in Support of the Temporary Restraining Order suggest that masking is part of the layered approach used to help slow the rate of transmission of COVID-19.  The rate of transmission in the community has increased in recent weeks due to the spread of the Omicron variant.  The optional masking policy increases risks to the health and wellbeing of the Plaintiffs and all students in the District.  Further, immunocompromised students at higher risk are less able to safely attend classes in-person with an optional masking environment.  In such circumstances, Plaintiffs have demonstrated a likelihood of establishing that they will suffer irreparable harm.

3. **Hardship to Defendants**

Students have been wearing masks in the District for the majority of the 2020, 2021, and 2022 school years to date.  The mask mandate status has been attained and maintained within the District without unreasonable expenditure or difficulty.  The Defendants cite no evidence in their Brief of how masks place an undue burden upon the District.  As such, the District not will experience significant hardship if the District again requires the wearing of masks in school.

4. **Public Interest**

The public interest weighs in favor of granting the Temporary Restraining Order.  In passing the ADA, Congress has created a public policy of providing access for disabled persons in the least restrictive means possible.  Society has an interest in protecting disabled persons from discrimination.  *See* 42 U.S.C. § 12101(a)(2).  As the District has removed a reasonable accommodation that prevents immunocompromised Plaintiffs from access to the benefits of

receiving a public education in the District, the public interest weighs in favor of removing such barriers to access for disabled Plaintiffs.

Additionally, and as Plaintiffs suggest in their Brief, wearing masks slows the transmission of COVID-19. As such, requiring masks in the District weighs in favor of the public interest because it will help to slow the spread of COVID-19 in the District and the wider community. Requiring masks in the District will also help slow the spread of Covid-19 to disabled students in the District.

## IV. Conclusion

It gives this Court no pleasure to interfere with School Board matters, but where the Constitution and federal law are implicated, it must. As this case moves forward, the Court would encourage a pragmatic, practical, and compassionate approach by the parties that demonstrates competent deliberation.

Therefore, the following order is hereby entered.

AND NOW this 17th day of January 2022, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiffs' Motion for Temporary Restraining Order is hereby GRANTED as follows:

1. Defendants are enjoined from implementing the December 8, 2021 Board decision to eliminate the benchmark requiring masks in the District when the rate of community transmission is at a rate of "substantial" or "high."

2. The effect of this Order maintains the status quo from the September 22, 2021 Board meeting and to require universal masking as per said benchmark standard.

3. IT IS FURTHER ORDERED that Defendants shall immediately notify the affected public, student body, and staff regarding this Order.

4. This Temporary Restraining Order shall remain in effect until further Order of the Court or until further School Board Action that complies with the ADA and Section 504 of the Rehabilitation Act.

5. No Bond is required.

DATED this 17th day of January 2022.

                                              Marilyn J. Horan
                                              United States District Judge